## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARY BRADLEY AND LEVON WRIGHT,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **ESCAMBIA COUNTY BOARD** | ) | |
| **OF EDUCATION AND Kevin Hoomes,** | ) | **Civil Action No: 1:20-cv-00285** |
| **Danny Benjamin, Mike Edwards,** | ) | **JURY DEMAND** |
| **Cindy A. Jackson, Willie J.** | ) | |
| **Grissett, David Nolin,** | ) | |
| **and Coleman Wallace, in their** | ) | |
| **official and representative capacities** | ) | |
| **as members of the Escambia County** | ) | |
| **Board of Education, and John J. Knott,** | ) | |
| **Superintendent of the Escambia County** | ) | |
| **Board of Education,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT OF PLAINTIFFS MARY BRADLEY AND LEVON WRIGHT

---

Plaintiffs Mary Bradley (hereinafter "Bradley") and Levon Wright (hereinafter "Wright")

bring this action against the Escambia County Board of Education, (hereinafter "ECBOE") a

governmental entity organized and existing in Brewton, Escambia County, Alabama; and Kevin

Hoomes, Danny Benjamin, Mike Edwards, Cindy A. Jackson, Willie J. Grissett, David Nolin,

and Coleman Wallace in their official capacities as Board members of the Escambia County

Board of Education, and John Knott, (hereinafter "Knott"), in his official capacity as the

Superintendent of the Escambia County Board of Education, for declaratory and equitable and

injunctive relief, and compensatory damages from Defendants arising from Defendants' violation

of rights guaranteed to Plaintiffs under Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. Section 2000e et seq, and the Fourth and Fourteenth Amendments to the United States

Constitution, 42 U.S.C. Section 1983.  Wright and Bradley bring this action against ECBOE on

behalf of themselves and on behalf of others who are similarly situated.

## JURISDICTION

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331,

1343(4), 2201, 2202 and 42 U.S.C. Section 2000e et seq, and 42 U.S.C. Section 1983.

2.      Jurisdiction to grant injunctive and declaratory equitable relief as well as damages

is invoked pursuant to 42 U.S.C. §2000e-5(f) and (g), 42 U.S.C. §1983 and 42 U.S.C. §1985(3).

## VENUE

3.      Venue is proper in the Southern District of Alabama, Southern Division, since

Defendants conduct business within this District and Division and this is where acts of

discrimination occurred.

## PARTIES

4.      Plaintiff Mary Bradley, an African-American female, is over the age of nineteen

years and a resident citizen of Brewton, Escambia County, Alabama.  At all times relevant to this

action Bradley was employed by the Escambia County Board of Education (ECBOE).

5.      Plaintiff Levon Wright, an African-American male, is over the age of nineteen

years and a resident citizen of Atmore, Escambia County, Alabama.  At all times relevant to this

action Wright was employed by the ECBOE.

6.      Defendant Escambia County Board of Education is a governmental entity doing

business in Escambia County, Alabama.  Defendant is engaged in an industry affecting commerce and is a program receiving state and/or federal financial assistance.

7.      Defendant John Knott, a white male, is the Superintendent of ECBOE. Knott is sued in his official capacity only to enforce equitable and injunctive relief requested herein.

8.      Defendants Kevin Hoomes, Danny Benjamin, Mike Edwards, Cindy A. Jackson, Willie J. Grissett, David Nolin, and Coleman Wallace, are Board Members for ECBOE. Defendants are sued in their official capacity only to enforce equitable and injunctive relief requested herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Prior to filing this civil action, Plaintiffs timely filed written charges asserting discrimination and retaliation with the Equal Employment Opportunity Commission.

10.     On January 24, 2020, the EEOC issued Bradley a notice of Right to Sue which is attached hereto as Exhibit "A."

11.     On February 7, 2020, the EEOC issued Wright a notice of Right to Sue which is attached hereto as Exhibit "B."

12.     On April 22, 2020, the parties entered into a tolling agreement to extend the statute of limitations filing date and/or to waive any and all defenses regarding the same.

13.     Plaintiffs have exhausted and satisfied all administrative remedies and pre-requisites to filing this action.

## FACTUAL ALLEGATIONS
## (BRADLEY)

14.     Bradley was hired by the Escambia County Board of Education (ECBOE) on or

about 1995, as a CNP Lunchroom Worker. Bradley was promoted to the position of CNP

Lunchroom Manager on June 16, 2011, and remains so classified at all times relevant to this

Complaint.

15.     At all times relevant to this Charge, Bradley satisfactorily performed her duties.

16.     Bradley and Brenda Watkins are the only African-Americans holding a

management position at the nine (9) ECBOE cafeterias during times relevant herein.

17.     On or about 2016, Suzanne Boutwell (hereinafter "Boutwell") became Bradley's

direct supervisor.

18.     Boutwell treated Bradley differently than other non-minority CNP Managers in

the terms and conditions of her employment including, but not limited to lack of support and

assistance, scheduling, failure to respond to problem employees, discipline, work place scrutiny,

lack of resources and tools, and being treated in an abusive and hostile manner.

19.     Boutwell allowed subordinates of Bradley to bypass normal supervisory channels

and procedures and practices utilized by the ECBOE.  The actions of Boutwell undermined

Bradley's relationship with her employees and her ability to perform her required duties in the

cafeteria.

20.     Upon information and belief, Boutwell and Superintendent John Knott

(hereinafter "Knott") solicited Bradley's subordinates and employees to complain about Bradley

and received and processed complaints against Bradley without question and/or inquiry.

21.     Upon information belief, In 2017, Superintendent Knott informed an employee

who came to his office, Mary Sheffield, that Knott intended Bradley to "be gone before the next

year."

4

22.     It is unusual for employees to assert complaints directly to the Superintendent without first going through a grievance and/or complaint process.

23.     The method and manner that Boutwell addressed Bradley's concerns regarding her employees, her efforts to discipline her employees, and/or her efforts to establish procedures in the W.S. Neal Cafeteria were different than methods utilized with other non-minority Cafeteria Managers.

24.     Bradley was not provided an opportunity to address complaints asserted with Boutwell and Knott  and/or to provide any defenses to allegations asserted against her.

25.     The actions of Boutwell and Knott undercut Bradley's authority as a supervisor, her relationship with her employees, and created a racially hostile working environment.

26.     Other non-minority cafeteria managers are given notice of subordinate complaints and given an opportunity to address such complaints directly with the employee.  Bradley was never given any such opportunity by Boutwell and/or Knott.

27.     Bradley was assigned insufficient staffing in her cafeteria despite requests for additional help.  Bradley's request for additional staffing were ignored.

28.     Bradley was provided inadequate resources and equipment including, but not limited to, drying racks and breakfast carts, despite notice and requests regarding the same.

29.     Bradley was issued reprimands for alleged deficiencies which were the direct result of insufficient and/or ineffective equipment and resources.

30.     Other Cafeteria Managers at ECBOE were provided fully operational equipment and provided needed resources and staff to allow them to successfully perform their job duties.

31.     Bradley was constantly reprimanded and harassed regarding deficiencies in the

Cafeteria.

32.     Other Cafeteria Managers serving less students and faculty members than W.S.
Neal, were provided more cafeteria workers than provided to Bradley.

33.     The reduced staff at W.S. Neal High School required Bradley to be responsible for
substantially more duties and functions at her cafeteria than other cafeterias in the county
including, but not limited to, cleaning  cashiering, serving, and preparing meals.

34.     The lack of staffing at the W.S. Neal High School Cafeteria was inconsistent with
staffing practices of ECBOE at other school cafeterias and, further, inconsistent with how other
facilities and Cafeteria Managers at ECBOE were being managed and/or assisted.

35.     Bradley was not allowed to hire or have input in staff typically hired by a
Cafeteria Managers and attempts to seek assistance from other staff members was prohibited.

36.     ECBOE's refusal and/or failure to properly staff the W.S. Neal Cafeteria resulted
in insufficient manpower to properly maintain and manage the Cafeteria.

37.     The lack of resources and staffing at W.S. Neal created a hardship for Bradley and
interfered with her ability to perform her job duties.

38.     Similarly situated cafeterias and Cafeteria Managers were provided sufficient
tools, employees, and support and assistance to handle the required work load required of them.

39.     Boutwell scrutinized Bradley's job performance and issued numerous reprimands
to Bradley without inquiring and/or verifying about the circumstances or events.

40.     It was unusual at ECBOE and not custom or practice of the Board to initiate
discipline against an employee without inquiry and an opportunity to correct alleged deficiencies.

41.     The constant scrutiny and interference with Bradley's job performance by

Boutwell created a hostile working environment.

42.     On or about 2016, Bradley was placed on administrative leave and advised that ECBOE would be conducting an investigation regarding her alleged conduct.

43.     On or about 2016, Boutwell interviewed numerous employees of Bradley to determine if she had directed her employees to perform duties outside of their job description.

44.     No action was taken by ECBOE against Bradley and she was returned to her position within one week without explanation.

45.     On or about May 31, 2018, Knott informed Bradley of his recommendation and proposed partial termination of Bradley as a CNP Lunchroom Manager at W.S. Neal High School.  Knott informed Bradley that she would be rehired the following year as a lunchroom cafeteria worker and would be transferred to another location.

46.     Bradley's supervisors failed to inform her of the alleged concerns and/or performance issues addressed in the partial termination notice prior to Bradley's receipt of the Notice from Knott.

47.     ECBOE failed and/or refused to follow proper procedures regarding Bradley's proposed partial termination.

48.     Bradley contested the partial termination on June 5, 2018, and filed a declaratory action in the Circuit Court of Escambia County asserting the notice and proposed demotion and partial termination violated her due process rights under the Students First Act and state and federal law.

49.     On August 22, 2018, ECBOE withdrew the partial termination and reinstated Bradley to her position of Cafeteria Manager.  As a result, The claims filed in the Escambia

County Circuit Court were dismissed.

50.     In August, 2018, Bradley returned to W.S. Neal in her position as Cafeteria

Manager.

51.     When Bradley returned to school for the 2018-2019 School year, Boutwell had

assigned two employees, Alyssa Williams (hereinafter "Williams") and Morgan Cooper

(hereinafter "Cooper") as Cafeteria Workers under the supervision of Bradley.

52.     Both Williams and Cooper had noted performance issues prior to their transfer to

W.S. Neal.

53.     Bradley was not advised of the placement of Williams and Cooper at W.S. Neil

nor was she allowed any input as to who was placed under her supervision in the cafeteria.

54.     Upon information and belief, Boutwell encouraged  Williams and Cooper to

record Bradley and to report any performance observations.

55.     Bradley addressed concerns regarding the assignment of Williams and Cooper and

the lack of communication with Bradley regarding these assignments with her supervisor,

Boutwell.

56.     It was unusual for an employee to be hired and/or transferred to another location

without first communicating with the supervisor at that location.

57.     Williams and Cooper were very hostile toward Bradley from the first day of their

placement and assignment.  Plaintiff Bradley's complaints regarding the insubordination and

hostility were ignored.

58.     Williams and Cooper refused to follow Bradley's directives telling her, "We don't

have to do anything" because Boutwell said "You can't do anything to me."

59.     On or about August, 2018, Bradley, again, discussed concerns that the lunch room at W.S. Neal was understaffed.

60.     In August, 2018, Bradley issued numerous verbal warnings to Williams regarding her job performance. When her performance did not improve, Bradley requested support from her supervisor, Boutwell, to address performance deficiencies.

61.     Bradley's requests for assistance from Boutwell regarding problems with her employees were ignored.  As a result, Bradley's employees performance issues escalated.

62.     On September 28, 2018, Bradley issued Williams a written reprimand documenting various performance issues she had observed.

63.     On October 8, 2018, Bradley was notified by Sandra Reid (hereinafter "Reid"), Human Resources, that Knott wanted to schedule a meeting to discuss a grievance filed against Bradley by Williams. Bradley was provided no specifics regarding the alleged complaints sufficient to allow her to defend herself.

64.      It is customary and the normal practice and procedure to address employee complaints with the supervisor prior to allowing a formal grievance to go forward.

65.     On October 11, 2018, Bradley attended a meeting with Knott and Reid where she was verbally reprimanded for alleged poor performance by Supt. Knott and issued a plan of action.

66.     Bradley disputed the allegations asserted, but was given very little opportunity to address the concerns regarding her employees conduct and motives.

67.     On October 11, 2018, Bradley verbally complained of discrimination to both Reid and Knott asserting a hostile work environment and disparate treatment.

68.     Upon information and belief, ECBOE failed and/or refused to investigate Bradley's complaints of discrimination and/or to take any action to stop the harassment by Boutwell and her employees.

69.     After Bradley asserted a formal complaint of discrimination, the scrutiny and harassment of Bradley became more severe and pervasive.

70.     On October 22, 2018, Bradley was directed to report to Central Office on October 23, 2018, regarding a reprimand to be issued regarding her performance.  Bradley requested that the conference be rescheduled to allow her representative to be present which was denied.

71.     On October 23, 2018, Boutwell and Reid met with Bradley and issued a written reprimand for alleged poor performance in the cafeteria.  Knott provided insufficient notice and opportunity to prepare for the allegations against her.

72.     Bradley, again, complained of discrimination and asserted the reprimand was discriminatory and retaliatory for her prior complaints of discrimination.

73.     On October 30, 2018, Bradley was directed to come to the Central Office on October 31, 2018, to attend a grievance conference before Knott.  Bradley was not informed of the nature of the grievance, who filed the grievance, or any allegations that were asserted against her. Upon information and belief, the meeting was cancelled due to contact from her representative.

74.     On November 5, 2018, Boutwell verbally reprimanded Bradley regarding her alleged failure to train Cooper and provided to Bradley instructions regarding training of employees.

75.     On  November 7, 2018, Bradley filed a Charge of Discrimination with the EEOC.

76.     On November 9, 2018, the ECBOE received notice of Bradley's EEOC Charge of Discrimination.

77.     On or about November 15, 2018, Bradley was issued a formal written reprimand and Plan of Action by HR Director, Sandra Reid and Boutwell. Bradley contested the allegations of the reprimand and filed a formal appeal which remains pending.

78.     On or about August 14, 2019, Bradley was provided an evaluation score of "12" reflecting an unsatisfactory performance evaluation. The evaluation and score was a substantial change in her evaluation scores and contrary to the opinions and recommendations of her Principal, William Hodge.

79.     Bradley was harassed and retaliated against for filing complaints of discrimination and  harassment.

80.     The harassment and hostility by Bradley's supervisors, Boutwell and Knott, became more severe and pervasive including a substantial increase in her workload, hostility, isolation, lack of support, and lack of assistance in insuring work was performed.

81.     The work scrutiny, failure to assist and/or support Bradley in her Cafeteria Management position, along with the other disparate treatment and hostile acts directed towards her, was because of her race, African American.

82.     Bradley was subjected to a retaliatory hostile work environment as a result of her complaints of discrimination and retaliation, including her complaints to the EEOC, creating a retaliatory hostile working environment in violation of the Civil Rights Act of 1964.

83.     No action was taken by ECBOE to stop the harassment or to create an environment that was not hostile and/or discriminatory despite notice of the same.

84.     Bradley was harassed, discriminated and retaliated against by Boutwell and Knott.

85.     The actions of Defendants were offensive, retaliatory, and created a hostile working environment.

86.     The actions of Boutwell and Knott were ratified by ECBOE resulting in a hostile and retaliatory working environment in violation of Title VII of the Civil Rights Act of 1964.

87.     Upon information and belief, other African-Americans have been similarly treated and discriminated against and harassed.

88.     ECBOE has engaged in a pattern and practice of discriminating against African Americans in violation of Title VII.

89.     The actions of ECBOE affected the terms and conditions of Bradley's Employment with ECBOE and inhibited her ability to adequately perform her duties and responsibilities as a Cafeteria Manager.

90.     Defendant ECBOE, and its decision makers, knew or should have known of the conduct of Boutwell and Knott described herein but failed to take the information seriously and/or provide the Plaintiffs an effective remedy to the conduct.

91.     Upon information and belief, ECBOE had ineffective and inadequate policies and procedures for training its employees and managerial employees in a manner as to avoid the type of conduct alleged herein.  In particular, upon information and belief, Defendant ECBOE provided no training or direction to its employees and/or managers in discrimination and/or retaliation.

92.     After Bradley complained about the harassment and retaliation of Boutwell, ECBOE and its employees and managers began to retaliate against her in the terms and

12

conditions of her employment including, but not limited to, reprimands, poor evaluations, disengaging her from input regarding cafeteria management, and alienating and causing tension between Bradley and her employees.

93.     Department and its decision makers and supervisors knew or should have known of the conduct of Boutwell and Knott described herein, but failed to take the information seriously and/or to provide the Plaintiff Bradley an effective remedy to the conduct.

94.     The conduct alleged herein created an intolerable condition and work environment under which Bradley worked or attempted to work.

95.     As the direct and proximate result of the wrongful actions of ECBOE, Bradley was caused to suffer extreme mental anguish, loss of dignity, frustration, embarrassment, humiliation, anger, and other intangible injuries and other directly and indirectly related expenses.

96.     Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## FACTUAL ALLEGATIONS
### (WRIGHT)

97.     On or about August, 2012, Levon Wright, an African-American male, was hired by ECBOE as a para-professional and assigned to work at the Escambia County Middle School.

98.     On or about August, 2014, Wright, was hired by the ECBOE as a Middle School Teacher and assigned to work under the direction of the Principal, Dr. Anthony Morris.

99.     On or about August, 2016, Deborah Bolden (hereinafter "Bolden") was assigned

as the Principal of Escambia County Middle School and became Wright's direct supervisor.

100.     At all times relevant to this action, Wright satisfactorily performed his duties as a

Teacher.

101.     On or about 2014, Wright was approved and assigned to administer SAT testing

to students by the Testing Administrative Services (TAS) at Escambia County Middle School.

Wright was qualified and trained to perform such activities and at all times relevant hereto

performed these duties satisfactorily.

102.     On or about August, 2017, Bolden, Prinicpal at Escambia County Middle School,

began to engage in targeted intimidation and racial harassment of Wright by saturating his class

with discipline special needs children, job scrutiny, removing critical instructional time, requiring

Wright to discipline children outside of his supervision and authority, and hindering Wright's

ability to effectively teach his children.

103.     On or about August, 2017, Wright displayed a bulletin board in his classroom

exhibiting famous and inspiring pictures and quotes from Martin Luther King, John F. Kennedy,

Oprah Winfrey, Sojourner Truth and Malcolm X.  Wright believed the exhibit was both

educational and appropriate for his classroom and the learning environment of his students.

104.     August 3, 2017, Bolden directed Wright to take down his bulletin Board because

it was "too aggressive".

105.     Teachers are entitled to academic freedoms in their classrooms which includes the

right to design posters and blackboards displayed in their classrooms.  As a result, Wright

believed the comments by Bolden were continuing harassment, racial targeting, and

discriminatory.

106.    On or about August 5, 2017, Wright was called to a meeting with Amy Cabiness (hereinafter "Cabiness"), Escambia County Supervisor of Secondary Instruction, a white female, and Kim Griffin, Assistant Principal of the Escambia County Middle School. Cabiness informed Wright that his classroom bulletin board was "too black" and directed Wright to "take it down".

107.    Wright perceived the verbal reprimand of Cabiness and directives to change the bulletin board because it was "too black" to be discriminatory.

108.    On or about August 10, 2017, Mona Simmons (hereinafter "Simmons"), Human Resource Director, contacted Wright to discuss the bulletin board concerns. Wright verbally complained to Simmons, Human Resource Director, that Bolden and Cabiness had discriminated against him and, further, that the bulletin board directives were racially motivated.

109.    Simmons advised Wright that Superintendent, Knott was involved and that he had received pictures of the room. Simmons reminded Wright he was not "tenured" and suggested he could be terminated if he took this further. Simmons told Wright "If you want your job, you should let it go."

110.    Simmons, Human Resource Director, statements to Wright were for the intended purpose of intimidation and to discourage Wright from filing complaints of discrimination.

111.    Wright removed the bulletin board due to concerns that his complaints may result in his non-renewal and termination.

112.    After Wright verbally complained of discrimination to Simmons, Human Resource Director, the harassment and hostility toward him by Bolden became more severe and pervasive including, but not limited to, over population of classes, job scrutiny, a search of his harassment of his wife, peer isolation and increased hostility.

113. The harassment of Wright by Bolden interfered with his ability to perform his duties.

114. On or about July, 2018, Wright requested a transfer to another school due to the hostile work environment.

115. In July, 2018, Wright's transfer request was granted and he was transferred to Escambia County High School and reassigned to teach 11th Grade English.

116. On or about August 3, 2018, Bolden approached Wright at an In-Service meeting for Teachers and verbally attacked him. Bolden called Wright a "liar," a "hypocrite", and informed stated she should have "fired" Wright "when she had the chance".

117. Wright found Bolden's verbal attack against him to be discriminatory and hostile.

118. On August 10, 2018, Wright filed a complaint against Cabiness, Supervisor of Secondary Instruction, and Bolden, Principal of Escambia Middle School, for their racially inappropriate comments and directives to remove the bulletin board items from his classroom, racial targeting, and a racially hostile working environment.

119. Upon information and belief, Knott advised Wright's AEA representative that Wright should refrain from pursuing his discrimination claims because Knott had "damning evidence against [him]".

120. On August 27, 2018, Reid issued a Grievance Report and findings holding Bolden and Cabiness' actions were not discriminatory.

121. On or about August 27, 2018, Sandra Reid, Human Resource Director, met with Wright and informed him that Bolden no longer wanted him on her campus at Escambia County Middle School. Wright was advised that Cabiness and Bolden would no longer have any

supervisory authority and/or contact with Wright.

122.    Wright was retaliated for his complaints of discrimination against Cabiness and Bolden including, but not limited to, searching his wife's computer, a high school class saturated with known discipline problems, an over populated classroom, the assignment and responsibility for On Campus Suspension (OCS), job scrutiny, and isolation from my peers.

123.    After Wright filed complaints against Cabiness and Bolden, Cabiness began to initiate harassing conduct towards Wright and to retaliate against him.  In addition, Cabiness continued to come to Wright's assigned school to observe him despite directives to have no further contact.

124.    On September 5, 2018, ECBOE made a request with the State Department of Education to move the testing center from Escambia County Middle School to the Escambia County High School.

125.    On September 17, 2018, Wright was informed by ECBOE that his position as Test Administrator had been eliminated.

126.    ECBOE never inquired with Wright about his willingness and/or ability to relocate his SAT services to the Escambia County High School.

127.    All testing administrators at Escambia County Middle School were reassigned to the new testing site at the Escambia county High School except Wright.

128.    ECBOE makes recommendations and assigns teachers responsible for administering SAT testing to students at their schools.

129.    Upon information, there was no contact with TAS regarding the testing site relocation. TAS had already advertised and signed up students for the middle school location and

the sudden move created problems in the sign up and administering of the SAT for upcoming scheduled testing.

130.     Wright was subjected to a hostile environment and retaliatory environment as a result of discrimination complaints asserted in violation of the Civil Rights Act of 1964, as amended.

131.     The harassment of Wright by Bolden and Cabiness was of a continuing nature.

132.     ECBOE has engaged in a pattern and practice of discrimination and racial harassment against African American employees.

133.     No action was taken by ECBOE to stop the harassment of Wright and others or to create an environment that was not hostile and/or discriminatory despite notice of the same.

134.     As a proximate consequence of the actions of Defendants, Wright was caused to suffer damages, including lost wages, pain and suffering, and emotional distress.

135.     ECBOE ratified the unlawful conduct of Bolden and Cabiness by failing to take appropriate and corrective action after having received notice thereof.

136.     As a result of the Defendant's actions, Wright has been caused to suffer distress, anxiety, frustration, and loss of income.

137.     Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce his rights under Title VII and is required to pay his attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT I - Retaliation in Violation of Title VII

138.     Plaintiffs Bradley and Wright assert this claim against Defendants, ECBOE, and Knott in his official capacity at Superintendent, and Kevin Hoomes, Danny Benjamin, Mike

Edwards, Cindy A. Jackson, Willie J. Grissett, David Nolin, and Coleman Wallace, in their official capacities as Board members of ECBOE.

139.     Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if fully set forth herein.

140.     Plaintiffs provided notice of oral and written complaints of discrimination and retaliation against their supervisors, Bolden, Boutwell, and Cabiness with ECBOE in accordance with policies regarding the same.

141.     Plaintiffs also filed charges with Equal Employment Opportunity Commission (EEOC) asserting claims against ECBOE for discrimination and retaliation.

142.     After Plaintiffs complained of discriminatory conduct with Defendant ECBOE, its agents have treated Plaintiffs in an adverse manner including, but not limited to, treating them in a hostile manner, denying resources and training, increased scrutiny, poor evaluations, disciplinary action, isolation, and hostility.

143.     Plaintiffs opposition to discriminatory conduct was a direct cause of the adverse actions that were initiated against them and was both unwarranted and pretext for discrimination and/or retaliation.

144.     Defendants have engaged a pattern and practice of discriminatory conduct against Plaintiffs and other similarly situated.

145.     Plaintiffs opposed employment practices they reasonably believed to be discriminatory and in violation of Title VII.

146.     Plaintiffs reasonably participated in an investigation concerning unemployment practices they reasonably believed to be discriminatory.

19

147.     The Plaintiffs' opposition or participation in these matters was a motivating factor in ECBOE's decisions to treat them hostilely and to take adverse actions against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e-3(a).

148.     As a result of Defendant's conduct, Plaintiffs have suffered a loss of income as well as frustration, anxiety, anger, and emotional distress and other compensatory damages.

149.     Defendants' actions were willful, with malice and with reckless disregard for Plaintiff's rights.

150.     Defendants' conduct was done with reckless indifference to the Plaintiffs' federally protected rights.

151.     Defendants failed to make good faith efforts to comply with Title VII.

152.     Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

### COUNT II - Retaliatory Hostile Work Environment in Violation of Title VII

153.     Plaintiffs Bradley and Wright assert this claim against Defendants, ECBOE, and Knott in his official capacity at Superintendent, and Kevin Hoomes, Danny Benjamin, Mike Edwards, Cindy A. Jackson, Willie J. Grissett, David Nolin, and Coleman Wallace, in their official capacities as Board members of ECBO.

154.     Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if full set forth herein.

155.     Plaintiffs were subjected to a retaliatory and hostile, offensive, and abusive working environment as a result of complaints of discrimination.

20

156.    Based upon the pervasive nature of the hostile environment, Defendant ECBOE knew or should have known of the hostile work environment.

157.    Plaintiffs found the harassment to be humiliating, offensive, unfair and in violation of their rights under Title VII.

158.    Defendant ECBOE received information regarding the retaliatory and hostile working environment and failed to take prompt, effective, remedial action upon notice of a hostile working environment.

159.    Plaintiff Wright has suffered compensatory damages as a result of the harassment.

160.    Plaintiffs have suffered frustration, anxiety, humiliation and emotional distress as a result of the harassment.

161.    Defendants knew or should have known that their conduct violated clearly established Federal law.

162.    Defendants' actions were willful, with malice and with reckless disregard for Plaintiff's rights.

163.    The Defendants' conduct was done with reckless indifference to the Plaintiffs' federally protected rights and Defendants failed to make good faith efforts to comply with Title VII.

164.    Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

### COUNT III - Hostile Work Environment in Violation of Title VII (Race)

165.    Plaintiffs Bradley and Wright assert this claim against Defendants, ECBOE, and

Knott in his official capacity at Superintendent, and Kevin Hoomes, Danny Benjamin, Mike

Edwards, Cindy A. Jackson, Willie J. Grissett, David Nolin, and Coleman Wallace, in their

official capacities as Board members of ECBOE.

166.    Plaintiffs aver and incorporate herein each of the foregoing paragraphs as if full

set forth herein.

167.    Plaintiffs were subjected to a hostile, offensive, and abusive working environment

as a result of their race, African-American.

168.     Based upon the pervasive nature of the hostile environment, Defendant ECBOE

knew or should have known of the hostile work environment.

169.    Plaintiffs found the harassment to be humiliating, offensive, unfair and in

violation of their rights under Title VII.

170.    Defendant ECBOE received information regarding the discriminatory and hostile

working environment and failed to take prompt, effective, remedial action upon notice of a

hostile working environment.

171.    Plaintiffs have suffered compensatory damages as a result of the harassment.

172.    Plaintiffs have suffered frustration, anxiety, humiliation and emotional distress as

a result of the harassment.

173.    Defendants knew or should have known that their conduct violated clearly

established Federal law.

174.    Defendant's actions were willful, with malice and with reckless disregard for

Plaintiff's rights.

175.    The Defendants' conduct was done with reckless indifference to the Plaintiff's

22

federally protected rights and Defendants failed to make good faith efforts to comply with Title VII.

176.    Plaintiffs have been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and are required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## COUNT IV - Disparate Treatment in Violation of Title VII

177.    Plaintiff Mary Bradley asserts this claim against Defendant ECBOE, Knott, in his official capacity as Superintendent, and Kevin Hoomes, Danny Benjamin, Mike Edwards, Cindy A. Jackson, Willie J. Grissett, David Nolin, and Coleman Wallace, in their official capacities as board members of ECBOE.

178.    Plaintiff Bradley avers and incorporates herein each of the foregoing paragraphs as if full set forth herein.

179.    Plaintiff Bradley was subjected to disparate treatment on the basis of her race in violation of Title VII.   Such discriminatory treatment included discipline, job assignments, lack of assistance, heightened scrutiny, disparate application of work rules and policies, and other terms and conditions of her employment.

180.    Plaintiff Bradley was treated differently on the basis of her race than similarly situated individuals.   Defendants have no legitimate non-discriminatory reason for it s conduct and any such reason is pretext for discrimination.

181.    Defendants have engaged in a pattern and practice of discriminatory and disparate treatment.

182.    As a result of Defendants' conduct, Plaintiff Bradley has suffered emotional distress,

embarrassment, frustration, and humiliation.

183.    Defendants' actions were willful, with malice and with reckless disregard for Plaintiffs' rights.

184.    Defendants failed to make good faith efforts to comply with Title VII.

185.    Defendants retaliated against Plaintiffs for their exercise of federally protected rights in violation of the Title VII and the Civil Rights Act of 1991, by instituting and conducting a systematic pattern and practice of discrimination and retaliation in an effort to create a hostile working environment.

186.    As the direct and proximate result of Department's wrongful actions, Plaintiff Bradley was caused to suffer mental anguish, loss of dignity, embarrassment, humiliation, and other intangible injuries and other directly and indirectly related expenses.  These injuries are continuing and Plaintiffs will continue to suffer such injuries in the future.

187.    Plaintiff has been forced to obtain legal services of the undersigned attorneys to enforce their rights under Title VII and is required to pay their attorneys reasonable attorneys' fees for the services rendered in this cause.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

A.    Grant Plaintiffs a declaratory judgment that the actions, policies and practices complained of herein of the defendants violate Plaintiffs' federally protected rights as set forth herein.

B.    Grant Plaintiffs a preliminary injunction enjoining the defendants, their agents,

24

successors, employees and attorneys and those acting in concert with them and at their direction, from maintaining or continuing the policies, practices, customs and usages of denying, abridging, withholding, conditioning, limiting, or otherwise interfering with the Plaintiffs' rights as set forth herein.

        C.      Grant Plaintiffs an order enjoining the defendants, their agents, successors, employees, and attorneys and those acting in concert with them and at their discretion, from engaging in practices that discriminate against Plaintiffs and enjoining defendants from failing and refusing to immediately restore Plaintiffs' employment status and classification.

        D.      Grant Plaintiff Wright any lost wages from Defendant ECBOE in the amount Plaintiff Wright would have earned but for those policies and practices complained herein.

        F.      Award compensatory damages against all defendants in an amount the jury determines will compensate the Plaintiffs for their losses and damages and/or nominal damages as may be appropriate.

        G.      Award Plaintiffs' costs and expenses in prosecuting this action including an award of reasonable attorneys' fees.

        H.      Retain jurisdiction of this action following judgment for sufficient time to insure that Defendants comply with the law and decree which may be entered herein, and during such time to require Defendants to report such information as is necessary to evaluate their compliance.

        I.      Grant Plaintiffs such other and further relief as equity and justice requires.

**PLAINTIFFS REQUEST A TRIAL BY JURY.**

Respectfully submitted this 22nd day of May, 2020.

*/s/ Mary E. Pilcher*
Mary E. Pilcher, Esq. (PIL008)
Stein & Pilcher, LLC
151 North Bancroft Street
P.O. Box 602
Fairhope, AL 36533
251-210-4557